IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG, PA

REGARDING:

U.S.

VS

WALPOLE, BRIAN



CRIMINAL NUMBER:

1:10-CR-0340

## MOTION FOR RETURN OF PROPERTY
## TO AN UNINDICTED PARTY
## UNDER RULE 41(g)

### SUMMARY

In ruling on this motion, the court has two issues to clarify and consider:

- Whether certain items seized under a search warrant at the address 345 Bruaw Drive, York, PA, on September 9th, 2010. Belong to Mrs. Walpole.

- Whether Special Agent Thew, FBI, has had sufficient time for forensic experts to evaluate and determine whether those items hold any evidentiary value.

A search warrant was signed by Judge Smyser, US Magistrate Judge, on September 3rd, 2010. The reasons stated on the warrant indicated Brian Walpole as the specific person who the FBI had an interest in exploring criminal activity. The search warrant allowed the Federal Officers to seize any item that could store data or electronic media. During the seizure, several items that were seized belonging to Mavis Walpole, the targets mother, were also seized.

Mrs. Walpole was out of state at the time of the seizures, but did manage to contact Agent Thew by phone. She explained that some of the items seized would belong to her. Agent Thew assured Mrs. Walpole that once those items had been examined by forensic specialists, and

cleared as not containing any illegal items, or evidence of illegal activity, they would be returned promptly. Agent Thew gave a rough estimate of 2 to 4 months time required for examination, but did indicate it could take longer. Although many of the items on the list of seized items belong to Mrs. Walpole, the only ones she has expressed a concern and desire for return, are:

- Item #1  Digital Picture Frame
- Item #7  HP Laptop Computer

Those assurances of return were repeated several times over the following months, including in October, when Mr. Walpole met with Agent Thew for an interview in the Federal Building in Harrisburg, PA. Agent Thew did explain that no one item could be examined "first," as it was a detailed process for each item, but that she has tried to tell the specialists to focus on Mrs. Walpole's items.

Agent Thew again addressed these items on December 3rd, 2010, at Mr. Walpole's initial appearance before a Magistrate Judge at the Federal Building in Harrisburg, PA. Speaking with Mrs. Walpole, Agent Thew once again assured Mrs. Walpole that those items would be finished with as quickly as possible.

Several phone contacts were attempted by Mrs. Walpole to Agent Thew throughout the following months. On March 29th, 2011, Mrs. Walpole was able to confront Agent Thew about her items again, while attending Mr. Walpole's bail review hearing. Further assurances were given, with Agent Thew even volunteering to personally deliver the items as soon as possible.

As of now, the government has had possession of Mrs. Walpole's laptop and digital picture frame for over one calendar year. Notice was received by Mrs. Walpole, as well as her son, that two items from the extensive list of items officially seized with the warrant were declared as permanently seized as evidence. Both those items were computers belonging to Mr. Walpole. Those are the only items that to date have been declared as evidence.

Mrs. Walpole has been without those items for over a year. Her computer was used for online banking, retirement fund controlling, Facebook, Ebay, and other personal uses, such as picture storage of her grandchildren. Mr. Walpole informed Agent Thew on September 9th that he did not use his mother's computer as a habit, and did not believe there was anything of value on it. He restated this in October in Harrisburg, while being interviewed by Agent Thew. Mrs. Walpole's digital picture frame was a gift from her children for Christmas, 2009. It contained pictures of her grandchildren in Arizona, from being very young, up to their ages at the time the frame was seized. There are also a few very short videos of her granddaughter that display on the frame. Those pictures and videos are loaded from a flash drive attached to the picture frame on the back. There is nothing of evidentiary value on the picture frame pertaining to Mr. Walpole's case.

As stated, Mr. Walpole did not make a habit of using his mother's computer. Mrs. Walpole also told Agent Thew the same. It should be noted that not being habitual is not the same as never. If there was an occasion where Mr. Walpole used his mother's computer, it would not have been for engaging in criminal activity. Mrs. Walpole feels that the government

has had ample time to examine her property. They have not formally declared it as evidence in Mr. Walpole's case. Agent Thew has given Mrs. Walpole no reason to believe that there is a problem with her belongings. No further contact has been made regarding her property by Agent Thew.

On March 29th, 2011, at Mr. Walpole's bail review hearing, US Prosecutor Bloom declared in court that he has quantities of evidence recovered against Mr. Walpole numbering in the hundreds of thousands. He did not indicate that any that evidence was discovered on Mrs. Walpole's property. It is also her opinion that with a number of items that high as evidence against Mr. Walpole, that even if there **was** something to be found on her laptop, or picture frame, that it would certainly be miniscule compared to those numbers Mr. Bloom was claiming at the bail review hearing. Mrs. Walpole questions whether any evidence that could possibly be on her belongings would certainly be "overkill," and a good example of FBI Agent Thew going over the top. There comes a point where too much evidence no longer carries any weight in considering sentencing. Mrs. Walpole still firmly believes that no such evidence is on her computer, and that it is well past time that those items were released to her.

Adding urgency to Mrs. Walpole's motion is the fact that she will be moving from Pennsylvania to Arizona in the immediate future. She would like some resolution concerning her items. The items were properly collected and SIGNED for by Agent Thew. If Agent Thew cannot produce these items, or is otherwise claiming that they are unavailable, Mrs. Walpole feels that this should be clearly stated at a motion hearing. She is concerned at this point that her belongings have somehow been misplaced or unlawfully taken home for someone's personal use. Under Rule 41 (g), Mrs. Walpole would like a judgment made as to whether her items should be returned to her at this time.

Thank you for your prompt consideration of this matter.

*Mavis L. Walpole*
717-586-8337

**\*5108 FEDERAL PRACTICE & PROCEDURE
VOLUME 3A. FEDERAL RULES OF CRIMINAL PROCEDURE
CHAPTER 10. SUPPLEMENTARY AND SPECIAL PROCEEDINGS
RULE 41. SEARCH AND SEIZURE**

Link to Monthly Supplemental Service

§ 690 Motion to Return Property

Primary Authority

Fed. R. Crim. P. 41

**Rule 41(g)** allows persons to move the government to return property. From its original adoption in 1944 until 2002, **Rule 41** covered motions to return property under subdivision (e). In 2002, the motion-to-return provision was re-designated **Rule 41(g)**. Courts recognize that case law interpreting former **Rule** 41(e) generally applies to current **Rule 41(g)**. [FN1]

A motion to return may be filed by any person "aggrieved by an unlawful search and seizure or by the deprivation of property." [FN2] Thus the person filing the motion need not be a party to the existing litigation. [FN3]

The Ninth Circuit en banc explained the difference between motions to suppress and motions to return in these words:

> The return of seized property under **Rule 41(g)** and the exclusionary **rule** serve fundamentally different purposes. Suppression helps ensure that law enforcement personnel adhere to constitutional norms by denying them, and the government they serve, the benefit of property that is unlawfully seized. **Rule 41(g)** is concerned with those whose property or privacy interests are impaired by the seizure. Suppression applies only to criminal defendants whereas the class of those aggrieved can be, as this case illustrates, much broader. [FN4]

In order to file a motion for return, the seizure need not have been unlawful. [FN5] Even though property has been lawfully seized, harm may come from the interference with the use of the property by persons who are not suspected of wrongdoing. [FN6] On a motion to return the burden is on the moving party to show that he or she is entitled to lawful possession of the property. [FN7] The party who carries the burden need do so only by a preponderance of the evidence. [FN8]

The motion must be filed in the district where the property was seized. [FN9]

There is no limitation on the time for a motion to return except the doctrine of laches. [FN10]

**\*5109** Motions to return property are treated with caution and restraint, [FN11] and the motion may be dismissed for lack of equity if the movant has an adequate remedy otherwise or cannot show irreparable injury. [FN12]

If factual issues need to be resolved to decide the motion, the court must receive evidence on the factual issues. [FN13] If the court grants a motion to return, it may impose reasonable conditions to protect access to the property for use in later proceedings. [FN14]

Movants for return of property must show they are entitled to lawful possession of the property. [FN15] The government cannot return property it does not possess, and a motion for the return of property must be denied if the government does not possess the property. [FN16] Rule 41(g) does not authorize an award of damages. [FN17]

Some cases have also allowed a motion for return of the property after conviction, and even though the property was lawfully seized, once the need for the evidence has terminated. [FN18] Both before indictment and after conviction, the person aggrieved may also be able to proceed by an independent civil action for return of the property. [FN19] If property has been ordered forfeited in a judicial forfeiture proceeding, this cannot be challenged by a motion under Criminal

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

Rule 41(g). [FN20] A motion for relief for judgment under Civil Rule 60(b) is the proper remedy.

As originally adopted and until 1972, Rule 41(e) provided a method for enforcing the protection against unreasonable search and seizure guaranteed by the Fourth Amendment. It allowed a person aggrieved to move the district court for the return on the property seized and to suppress for use as evidence anything so obtained. Rule 41(e) was a restatement of prior law and practice, [FN21] except that the rule required the motion to be made before the court while before adoption of the Rule it could be made to a United States commissioner. [FN22]

In 1972, what had been Rule 41(e) was divided into two subdivisions, former Rule 41(e) governing a motion for return of property and (f) governing a motion to suppress. The changes were intended to require the motion to suppress evidence to be made in the trial court rather than in the district where the evidence was seized. [FN23]

\*5110 Prior to the 1989 amendments, a motion for return of property, if granted, included suppression as part of the remedy. [FN24] This is no longer the law. The 1989 amendments deleted the former language that if the motion to return is granted the property "shall not be admissible in evidence at any hearing or trial." [FN25] The amendment recognizes that recent developments limiting the scope of the exclusionary rule [FN26] mean that not all property seized in violation of the Fourth Amendment must be excluded. [FN27] Thus a motion to return may now be granted without inevitably resulting in the suppression of that property in subsequent proceedings. [FN28]

Since former Rule 41(e) was amended in 1989 so that property returned to its owners can still be admitted as evidence at a hearing or trial, the good-faith exception announced in Leon no longer applies to Rule 41(g). [FN29] The 1989 amendments made another other change. Although the amended rule says that if the motion is granted, the property is to be returned to the movant, it added that "reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings." [FN30] A final amendment of former subdivision (e) in 1989 substituted "judge" for "court" in the second sentence of the subdivision. This change, now contained in **Rule 41(g)**, was intended to include magistrate judges. [FN31]

Pursuant to amendments made in 2002, the motion to return property is now covered in **Rule 41(g)**. [FN32]

[FN1] Case law under former **Rule** 31(e) applies

The 2002 amendments re-designated the subsection on motions for return of property from **Rule** 41(e) to **Rule 41(g)** without substantive change to the **Rule**, and courts have applied case law concerning former **Rule** 41(e) to the current **Rule 41(g)**. De Almeida v. U.S., 459 F.3d 377, 380 n.2 (2d Cir. 2006), citing Wright, King & Klein.

[FN2] Person aggrieved

**Rule 41(g)**.

[FN3] Need not be party

"When the motion [to return property] is made by a party against whom no criminal charges have been brought, such a motion is in fact a petition that the district court invoke its civil equitable jurisdiction." U.S. v. Comprehensive Drug Testing, Inc., 579 F.3d 989, 1001 (9th Cir. 2009) (en banc).

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription  09/16/2010

Pursuant to the execution of a search warrant authorized by the U.S. District Court, Middle District of Pennsylvania, on September 9, 2010, the residence located at 345 Bruaw Drive, York, PA was searched for items related to violations of Title 18 Statute 2252 and 2252A. The search team consisted of Special Agents Heather Thew, Timothy D. Lynch, Chad W. McNiven, Shane Hansen, Christopher Bean, James J. Nelson, and Task Force Officers (TFO) Hugh E. Earhart and Jeffrey D. Kurtz of the Federal Bureau of Investigation (FBI). Also present were Detectives Mark Baker and John Vaughn of the Northern York Regional Police Department.

The search team arrived at the residence at 345 Bruaw Drive, York, PA known as the WALPOLE residence. Agents knocked and announced at the front and rear doors of the above address thereby identifying themselves and their purpose at that location. There was no answer at either door. At approximately 6:50AM, the search team entered the location through an unlocked window at the rear of the residence. The team secured the residence to include verification of any occupants of the residence and the location of any weapons. No occupants or firearms were discovered within the residence.

Entry photographs were taken and the general layout of the residence was sketched. In Room D, an upstairs bedroom, $602.00 in USD cash was noted and photographed (not seized).

The following items were seized from the residence:

*mine* 1) One digital picture frame with attached flash drive
2) One CD-R
3) Item not taken
4) One CD-R
5) One DVD-RAM 60-min
6) Kodak 35mm Film 24 exp.
*mine* 7) HP G60 computer laptop, S/N 2CE927RF57
8) HP Pavilion computer laptop S/N CND8501V3G
9) HP Pavilion computer tower, S/N MXG70301D0
10) Roanoke Trade flash drive
11) HP flash drive, S/N D090303183
12) 3 "Ghost Clone" DVDs
13) 18 CDs

---

Investigation on  09/09/2010  at  York, PA

File #  305A-PH-107717                                   Date dictated  n/a

by  SA Heather Thew; SA Timothy D. Lynch; SA Chad W. McNiven; SA Shane Hansen; SA Christopher Bean; SA James J. Nelson; TFO Hugh E. Earhart; TFO Jeffrey D. Kurtz

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

305A-PH-107717

Continuation of FD-302 of __Search 345 Bruaw Drive, York, PA__, On __09/09/2010__, Page __2__

```
14) 7 Floppy disks
15) 3 CDs
16) One Imation Mini CD-R
17) Polaroid Digital Camera
18) Panasonic Video Camera S/N 40403697
19) HP computer tower S/N KR11022205
20) 5 DVD-Rams
21) 4 DVD-Rams
22) One M2 Memory Stick micro
```

    A FD-597 Receipt of Property was executed and a copy of the search warrant and Receipt were left at the residence. A final survey of the residence was conducted, exit photographs were taken, and, at approximately 9:33AM, the search team locked the doors, and exited and secured the residence.

    All photographs, sketches, evidence logs, and FD-597 Receipts of Property are made a part of this report in an attached 1A envelope.

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>1:10-mc-332 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The premises known as the Walpole residence consists of:

1.      The residential townhouse at 345 Bruaw Drive York, PA 17406 is located in the "Peacefields" residential development and situated on the north side of Bruaw Drive.  The residence is an attached multi-level townhouse with cream siding and white trim with a dark gray front door, single white garage door, and rear wood deck.  The numbers "345" are also affixed to the right of the front door.  The rear of the residence is bordered by Bruaw Drive and the numbers "345" are also affixed near the sliding door of the rear deck.

ATTACHMENT B

Below is a list of items to be searched and seized from the premises known as the Walpole residence at 345 Bruaw Drive York, PA 17406, which includes the residential structure as well as any garages, outbuildings, sheds, containers, etc.:

LIST OF ITEMS TO BE SEIZED

1. All visual depictions of minors engaged in sexually explicit conduct produced using minors engaged in such conduct, on whatever medium (e.g. digital media, optical media, books, magazines, photographs, negatives, videotapes, CDs, DVDs, etc.), including those in opened or unopened e-mails, and all metadata associated with any digital file. These include both originals and copies, and authorization is granted to remove videotapes without viewing them at the time and place of seizure, and to view them at a later time.

2. All documents (in documentary or electronic form), including correspondence, records, e-mails, chat logs, and internet history, pertaining to the possession, receipt, access to or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, or pertaining to an interest in child pornography whether transmitted or received.

3. All records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider (ISP), as well as all records relating to the ownership or use of computer equipment found in the residence.

4. All books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

5. All records which evidence operation or ownership or use of computer equipment found in the above residence, including, but not limited to, correspondence, sales receipts, bills for internet access, financial records, tax records, personal photographs, telephone records, notes books, diaries, reference materials, or other personal items, and registration information for any software on the computer.

6. Documents and records regarding the ownership and/or possession of the searched premises.

7. Credit card information including but not limited to bills and payment records.

8. During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.

9. All computer passwords, keywords and other data security devices designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software, or other programming code. Any password or encryption key that may control access to a computer operating system, individual computer files, or other electronic data.

10. Evidence of logs and files on a computer or storage device, such as those generated by the computer's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, were opened, were saved, or were deleted. Evidence tending to show the identity of the person using the computer at the time any visual depictions described in paragraph 1 were created, sent, received, or viewed.

11. The following may be seized and searched for all items listed above, and for any items specifically noted in the paragraphs below:

    a. Computer hardware, meaning any and all computer equipment. Included within the definition of computer hardware are any electronic devices capable of data processing (such as central processing units, laptop or notebook computers, personal digital assistants, gaming consoles, and wireless communication devices to include cellular telephone devices capable of internet access); peripheral input/output devices (such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media); related communications devices (such as modems, cables and connections); storage media, defined below; and security devices, also defined below.

    b. Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

    c. Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

    d. Data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records. Such items include, but are not limited to, user names and passwords; data security hardware (such as encryption devices, chips, and circuit boards); data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or date or to otherwise render programs or data into usable form.

    e. All storage media capable of collecting, storing, maintaining, retrieving,

concealing, transmitting, and backing up electronic data. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer-related equipment, such as fixed hard disks, external hard disks, removable hard disks (including micro drives), floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical storage devices, laser disks, thumb drives, iPods, digital cameras, memory cards (e.g. CF or SD cards), Xboxes, flash drives, or other memory storage devices.

The above seizure of computer and computer related hardware relates to such computer-related items as being the instrumentalities of crime and also to allow for analysis/search for evidence of crime in an appropriate forensic setting. Upon a determination that such examination would be more appropriately made in a controlled environment, this storage media may be removed and examined at a laboratory location.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Middle District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>345 Bruaw Drive<br>York, PA 17406 | )<br>)<br>)  Case No. 1:10-MC-332<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Middle_____ District of _____Pennsylvania_____
*(identify the person or describe the property to be searched and give its location)*:
the premises known as 345 Bruaw Drive, York, PA 17406, more particularly described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
computers, computer-related storage devices, digital photographic equipment, documents and/or photographs which constitute fruits of the crime or evidence exists on the premises known as 345 Bruaw Drive, York, PA 17406 (SEE ATTACHMENT B).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    SEPTEMBER 17, 2010
                                                                        *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
J. Andrew Smyser                                                    .
              *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                                                ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  SEPT. 3 2010 9:25 a.m.        *[signature]*
                                                                                                      *Judge's signature*

City and state:    Harrisburg, Pennsylvania          J. Andrew Smyser, United States Magistrate Judge
                                                                                *Printed name and title*

Ms. Walpole

### To Request Release of the Property

Upon the filing of a claim a claimant, pursuant to 18 U.S.C. 983 (f), may request release of the seized property during pendency of forfeiture proceedings due to hardship. **Property not subject to release under this provision includes: contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business; property to be used as evidence of a violation of law; property by reason of design or other characteristic is particularly suited for use in illegal activities; or property likely to be used to commit additional criminal acts if returned to the claimant.**

### To Request a Pardon of the Property

In addition to or in lieu of filing a claim, if you want to request a pardon of the forfeited property, submit a petition for remission or mitigation of the forfeiture to the FBI Field Division identified below. The petition must include proof of your ownership interest in the property or proof that you were a victim of the offense underlying the pending forfeiture, or a related offense, and the facts and circumstances which you believe justify a return of the property, a return of your interest in the property, or a return of part of the property. For the regulations pertaining to remission or mitigation of the forfeiture see 28 C.F.R. Sections 9.1-9.9. The criteria for requesting remission of the forfeiture are found at 28 C.F.R. Section 9.5(a). The criteria for requesting mitigation of the forfeiture are found at 28 C.F.R. Section 9.5(b). You should file the petition within thirty (30) days following the receipt of this mailed notice of seizure. The Ruling Official for all petitions for remission or mitigation in administrative forfeiture cases is the Forfeiture Counsel, who is the Unit Chief, Legal Forfeiture Unit, Office of the General Counsel, Federal Bureau of Investigation. The Ruling Official for all petitions for remission or mitigation in judicial forfeiture cases is the Chief, Asset Forfeiture and Money Laundering Section, Criminal Division, Department of Justice.

### Where to Submit Correspondence

The Seizure Number 3620100255 has been assigned to this forfeiture action. Use these numbers to identify the property when submitting the claim, petition or other correspondence to the FBI.

Submit all documents to this FBI Field Division:

    SPECIAL AGENT IN CHARGE
    FEDERAL BUREAU OF INVESTIGATION
    600 ARCH STREET
    8TH FLOOR
    PHILADELPHIA, PA  19106

    ATTENTION:  FORFEITURE PARALEGAL SPECIALIST
                        215-418-4071

Sincerely Yours,

Matthew S. Rasnake
Unit Chief
Forfeiture and Seized Property Unit
Finance Division

NOTE:  All telephone inquiries should be directed to the aforementioned FBI Field Division to the attention of the Forfeiture Paralegal Specialist. **Please do not send any written correspondence to Matthew S. Rasnake.**

Ms. Walpole

**Item List for Personal Seizure Notice**                                     November 2, 2010 (8:58AM)

**Seizure No:**  3620100255

| ASSET ID | ITEM DESCRIPTION | ITEM VALUE | VIN/SERIAL NO |
|---|---|---|---|
| 10-FBI-006700 | 1 Hewlitt Packard Pavilion DV7-1247CL Laptop Computer | | CND8501V3G |
| | 1 Hewlitt Packard Pavilion D4650Y Computer Tower | | MXG70301D0 |



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

November 2, 2010

Certified, Return Receipt

Ms. Mavis Walpole
345 Bruaw Drive
York, PA 17406

Dear Ms. Walpole:

### Factual and Legal Basis for Seizure

On September 9, 2010, property was seized by the Federal Bureau of Investigation (FBI) at York, Pennsylvania for forfeiture for violation of SEXUAL EXPLOITATION OF CHILDREN. The property is described as follows:

Miscellaneous Electronic Equipment (See Attached List)
Serial Number:       See Items List
Asset ID Number:     10-FBI-006700
Seizure Number:      3620100255

This forfeiture is being conducted pursuant to Title 18, United States Code (U.S.C.), Section 2254 and the following additional federal laws: 19 U.S.C. Sections 1602-1619 and 18 U.S.C. Section 983.

You may contest the seizure and forfeiture of this property and/or petition to the FBI and request a pardon of the forfeited property.

### To Contest the Forfeiture

If you want to contest the seizure or forfeiture of the property in court, you must file a claim of ownership with the FBI by December 7, 2010. The claim is filed when it is received by the FBI Forfeiture Paralegal Specialist of the FBI Field Division mentioned below except in cases of pro se incarcerated individuals as otherwise provided by law. The claim need not be made in any particular form. The claim shall identify the specific property being claimed and state the claimant's interest in such property. Documentary evidence supporting claimant's interest in the property may help substantiate the claim, **but is not required**. The claim must be made under oath, subject to penalty of perjury. **A frivolous claim may subject the claimant to a civil fine equal to ten (10) percent of the value of the forfeited property but in no event shall the fine be less than $250 or greater than $5,000 .**

**If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Failure to do so will waive your right to contest the forfeiture of the asset in this proceeding and any judicial proceeding - either civil or criminal - even if such a proceeding has already been commenced or is commenced in the future.**

Mavis Walpole
93 W Center St
Glen Rock, Pa 17327

Office of the Clerk
United States District Court
Middle District of Pennsylvania
US Courthouse
228 Walnut St
P.O. Box 983
Harrisburg, Pa 17108

RECEIVED
HARRISBURG, PA

SEP 14 2011

MARY E. D'ANDREA, CLERK
Per _____

